## CATH. BORLAND v. C. A. MEURER ET AL.

APPEAL BY ELLIS STOKES ET AL. FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 6, 1891—Decided January 26, 1891.

1. A third person, who, with money raised upon his own note, though with the aid of securities of the mortgagor, pays off an execution from a judgment on a mortgage bond, and has the judgment marked to his use, acquires not only control of the judgment but also the right to an assignment of the mortgage.
2. In such case, on failure of terre-tenants to discharge the mortgage subject to which they hold the mortgaged premises, the purchaser of the judgment may proceed by scire facias on the mortgage in the name of the mortgagee, without express authority from the latter.
3. Where the court below, without giving specific answers to points presented for charge, declined to affirm them, generally, a specification of error which groups the refusal of all the points into one assignment, is not in compliance with the Rules of the Supreme Court.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 295 January Term 1890, Sup. Ct.; court below, No. 312 June Term 1888, C. P. No. 1.

On June 28, 1888, a scire facias sur mortgage was issued at the suit of Catharine Borland, against Charles A. Meurer, executor of the will of Anthony Elton, deceased, with notice to Ellis Stokes and Rebecca B. Stokes, terre-tenants. Issue.

Statement of Facts.

At the trial, on October 24, 1889, there was put in evidence, on behalf of the plaintiff, a mortgage executed by Anthony Elton to Catharine Borland, dated February 27, 1880, and recorded. The plaintiff then rested. The terre-tenants, defending, called Catharine Borland, the plaintiff on the record, who testified that she was satisfied of every demand against the defendants, and that she did not institute the suit, or direct it to be brought. "The settlement was made to me," she testified, "by Mr. Page. He was my lawyer and acted for me. The money was not paid to me, except through my counsel. . . . . I do not know anything more about it." The defendants then rested.

Each party requesting that a verdict be directed, but neither yielding, the plaintiff's counsel moved to amend the record by adding, after the name of Catharine Borland, the words, " to the use of C. A. Meurer."

The plaintiff then called Mr. S. Davis. Page, for the purpose of proving that the money paid to Miss Borland by the witness was received by him, as her attorney, from Charles A. Meurer, to whom he assigned " the judgment upon which the levy was made." The defendants objected, that Catharine Borland, the plaintiff, was the only person they had to meet. The court replied that the record was amended. The defendant then pleaded surprise and asked for a continuance. Then the plaintiff withdrew the amendment of record, and renewed the offer with the record as it stood. Objected to.

By the court: Objection overruled; exception.[1]

The witness then testified, in substance, that at a prior date he represented Catharine Borland, in a judgment entered on the mortgage bond, and had issued an execution and attachments thereon; that on March 28, 1884, Charles A. Meurer, pending the writs, tendered the amount of the judgment and costs, $23,061.25, which the witness accepted, giving an order as the plaintiff's attorney for the marking of the judgment to the use of Mr. Meurer, and a receipt stating: " In consideration of said payment, this judgment and the mortgage securing a bond on which it is entered are to be assigned without recourse to said Meurer." Mr. Page testified, further, that when his client called a few days thereafter, she objected to the assignment to Mr. Meurer and referred to instructions she had

Charge of Court below.

given witness's law-partner ; that, thereupon, the witness took a rule to strike off the marking to use, which was argued before Judges MITCHELL and HARE upon depositions taken, and after consideration it was decided by the court that the assignment was valid, and the rule discharged; and that the money was then paid over to Miss Borland.

Charles A. Meurer, called by the defendants, testified in reply to a question by the court, that at the time of the entry of the judgment referred to, he and Elton, the mortgagor and judgment defendant, were engaged in business as partners; that everything they had in their business was levied upon or attached under the judgment; that the witness raised the money by giving his own judgment note for the amount necessary, and paid it over to Mr. Page. Facts were disclosed, however, from which it was claimed by the use plaintiff, that the legal title to the premises mortgaged was then held by Elton in trust for the terre-tenants, and by the terre-tenants, that Meurer's notes were protected and afterwards paid, in part at least, by securities belonging to Elton. Other facts in evidence appear in the charge of the court below.

At the close of the testimony, the court, ALLISON, P. J., charged the jury in part as follows:

The contention, upon the part of the plaintiff, is that this mortgage is still a lien on this property. The mortgage, as appears from the evidence, was placed upon the property by Mr. Elton in whose name at least the title to the property stood, in this sum of $20,000, to clear off two other encumbrances which aggregated this sum. It seems that there was a prior mortgage and ground-rent, and that the prior mortgage and ground-rent together amounted to about or just the sum of $20,000. It became necessary to clear off those two encumbrances, and therefore this present mortgage of $20,000 was put upon the property. The money was borrowed from Miss Borland by Mr. Elton, who held the title to the property, and it remained in that way. The mortgage was accompanied by the bond, as is usually the case. . . . . .

The contention on the part of the plaintiff is, that, although the money passed from Mr. Meurer to Miss Borland in satisfaction of that judgment, that is, the satisfaction of her right

Charge of Court below.

to proceed any further upon the judgment, yet that the passage was not intended to extinguish the debt, and, as the evidence shows, that the intention was to keep the judgment alive by marking it to use ; that the debt was not extinguished at all, it was simply the lifting of the hand of the plaintiff in that judgment, who issued the execution and who issued the attachments, off the property and she transfering all her right and her power under that judgment to the person who had paid her the money for it. Of course, getting her money, she had no further control of the judgment except that she could have declined originally to have marked it to use. A plaintiff is not bound, when the money is tendered upon a judgment, to mark that judgment to the use of any person; but if she does mark it to use, or her attorney, acting for her, acting within the scope of his lawful authority, does mark it to use, then her power is entirely gone, because her claim is satisfied, she has got the money, and by the act of her attorney, all her rights ceased against the property as if that money had been paid to her, and passed over to the party to whose use the judgment stands.

That is the condition in which this case seems to have stood until the death of Mr. Elton, when Mr. Meurer, under the will of Mr. Elton, being appointed his executor, and the contention all around, upon the part of Mr. Elton, whatever was the controversy between Elton and Stokes, in regard to the ownership of the property during the lifetime of Mr. Elton, and the intention of Mr. Elton, according to the evidence in the case, was that he being the owner, so far as the possession of title was concerned, was to keep that judgment alive against that property.

Under the will of Mr. Elton there was a division of his estate among his heirs. He had four daughters, one of whom is the wife of Mr. Stokes. In the will, he makes certain provisions in regard to this property, treating the mortgage against this property as a valid claim against it, as a subsisting claim against it. Under that will, the wife of Mr. Stokes takes an interest in the estate of Mr. Elton. It seems, according to the testimony in the cause, that even after Mr. Elton's death when the question came up as to distribution of property among these four heirs, under the will of Mr. Elton, there was still

Charge of Court below.

contention in regard to the distribution of that estate, and
then, according to the evidence in the cause, the parties came
together and made what was called a family settlement, in
which family settlement Mr. Stokes and his wife and the other
three daughters of Mr. Elton all came to an agreement, touch-
ing this Broad street property, and there was an agreement
that the other three heirs of Mr. Elton should convey their in-
terest in this property to Mrs. Stokes, subject to the mortgage
which then existed upon it. By that agreement they all treated
that as a valid, live, subsisting mortgage and judgment bind-
ing that property upon North Broad street, in regard to which
this contention is now waged, and the wife of Mr. Stokes had
conveyed to her all the interests of the three sisters in the
property, charged with this mortgage and judgment-debt of
$20,000, taking up any settlement of the interest of Mr. Stokes'
wife or Mr. Stokes through his wife, in this estate of Mr. Elton,
at least so far as this property is concerned.

Whether there were some other portions of the estate of Mr.
Elton that went to Mrs. Stokes I do not know, it does not ap-
pear, or is not material. The question is as to whether the par-
ties themselves, Mr. Stokes and his wife, and the three sisters
of Mrs. Stokes, treated that mortgage and that judgment, not
as an extinguished and paid-off mortgage and judgment, but
as a full, active, live and subsisting judgment and mortgage,
even after the death of Mr. Elton, and whether they received
the whole benefit of the treatment upon that basis, by having
the three sisters convey to Mrs. Stokes all their interest in
that property, subject to that mortgage.

There seems to be no question about that, upon the face
of the family settlement, and there seems to have been no
question about it when the account of the executor of the
estate came up for adjudication in the Orphans' Court. In
two separate accounts passed on by Judge Penrose this same
question practically came before him, when he decided that
family settlement was a valid and binding contract between
the parties, and that Mrs. Stokes could not escape from the
payment of the mortgage which existed upon the property as
due to the estate of Mr. Elton, because she had not seen the
benefit and advantage which enured to her by taking to her-
self the conveyance of the interest of the three other sisters

Charge of Court below.

of that property. If that had not been done, three fourths of the interest in this property would have belonged to the other three sisters, and one fourth to Mrs. Stokes ; but the whole of the interest in the property was conveyed to Mrs. Stokes, and that is the consideration, as set forth upon that paper, as found in the adjudication of Judge Penrose, for the settlement of matters of controversy between Mrs. Stokes, represented by her husband, and Mr. Meurer, representing the interests of the estate of Mr. Elton, and also as binding other individual claims on that estate ; that is, the other three daughters. . . . .

If you believe, under all this evidence, that this judgment was to be regarded as a subsisting and valid judgment during the lifetime of Mr. Elton ; that it was so understood by him when he purchased it, or raised money to purchase it, through Mr. Meurer; putting the securities in the hands of Mr. Meurer to enable him, not to pay off the debt, but simply to lift the executions and the attachments from the personal property of Mr. Elton, I instruct you that would keep that judgment alive in the hands of Mr. Meurer as an asset of the estate of Mr. Elton ; because, the judgment being transferred to Mr. Meurer for the benefit of the estate, Mr. Meurer being the executor of the estate, would be bound to treat that as an asset and to collect this claim of $20,000 as against this particular property, so that each party would have borne the respective part of the amount which should be charged against them, dividing it into four equal parts.

There is no evidence to contradict this at all. There is the testimony of Mr. Meurer that the securities upon which he raised the money stood in the name of Mr. Elton. It is conceded by counsel that those were the securities of Mr. Elton, but there is no evidence to show that the testimony of Mr. Meurer, as he has given it to the jury, that these securities were given to enable him to raise the money, with a view of having these executions and these attachments lifted, and that he bought that judgment. That is his declaration, and is evidenced by the fact that it is marked to his use on the record. If you believe that, it is sufficient to show that that was a true, valid and subsisting judgment against this property. The mortgage upon that payment would not be extinguished. If the debt had been paid, the mortgage would be extinguished ; that is, if the judgment had actually been paid. . . . .

Charge of Court below.

Having said this, gentlemen, I decline to affirm the points submitted by counsel for the defendants; exception.[4]

—The jury returned a verdict for the plaintiff for $21,940.56. A rule for a new trial having been discharged and judgment entered, defendants Ellis Stokes and Rebecca Stokes, took this appeal, specifying that the court erred:

1. In admitting plaintiff's offer.[1]

2. In allowing the suit to be proceeded in without any amendment of the record.

3. In not directing a verdict for the defendants.

4. "In not affirming defendants' points for charge, viz.:

"1. If the jury believe that Catharine Borland was paid the amount of the mortgage debt by Meurer, in behalf of Elton, the said mortgage is extinguished, and the verdict must be for the defendants.

"2. If the jury believe that Catharine Borland was paid the amount of the judgment on the bond accompanying the mortgage sued on in this case, by Meurer, in behalf of Elton, the said judgment was paid by Elton, and not purchased by Meurer, and the said judgment is satisfied, and the mortgage is extinguished, and verdict must be for the defendants.

"3. That as the mortgage and the judgment were liens on land held by Elton, who had title thereto in his own name, payment of the judgment with Elton's funds and in his behalf, by Meurer, extinguished the lien of both mortgage and judgment, and the personal right thus once suspended went forever, and the plaintiff cannot recover.

"4. If the jury believe that the mortgage in this suit, and the bond accompanying it, were given by Anthony Elton to raise money on behalf of Stokes, on land which Elton held in secret trust for Stokes, and that the said mortgage debt was paid by Meurer with funds belonging to Elton alone, or to Elton and Stokes, jointly by reason of any indebtedness of Elton to Stokes, then the mortgage is extinguished, and plaintiff cannot recover.

"5. Verdict must be for defendants.

"6. If the jury believe that this mortgage and judgment on bond with it were paid by Elton, through Meurer, as an agent, the mortgage merged, and verdict must be for defendants."

*Mr. Owen B. Jenkins*, for the appellants.

Counsel cited: (1) Anderson v. Neff, 11 S. & R. 223; Wentz v. Dehaven, 1 S. & R. 317; Asay v. Hoover, 5 Pa. 35. (2) Reineman v. Robb, 98 Pa. 474; Thomas's App., 30 Pa. 378.

*Mr. John G. Johnson*, for the appellee.

Counsel cited: Abbott v. Kasson, 72 Pa. 185; Hart v. Rogers, 1 Am. L. J. 263; Loverin v. Safe Dep. Co., 113 Pa. 6; act of April 22, 1863, P. L. 567; Pryor v. Wood, 31 Pa. 142; Partridge v. Partridge, 38 Pa. 78; Armstrong v. Lancaster City, 5 W. 68; Memphis etc. R. Co. v. Wilcox, 48 Pa. 168.

OPINION, MR. JUSTICE MITCHELL:

It is not disputed that Elton borrowed the money from Borland for the relief of the mortgaged premises by the payment of encumbrances prior to the deed to him. The legal title was in Elton, but appellants were in actual occupation, and claimed to be the beneficial owners. Conceding this claim, the property was certainly the primary debtor for the mortgage in suit. In 1884, Borland entered up the bond and issued execution against Elton's personal property. To relieve this, Meurer raised the money, paid the amount to Borland's attorney, and had the judgment marked to his use. Subsequently he brought the present suit.

The only contested fact was the nature of the payment to Borland, and as to that the evidence was so entirely one-sided that it cannot be said to have been contested at all, except in the merest technical sense.

What, then, were the rights of the parties? The money that paid Borland was the money of Meurer, even though he raised it partly by the aid of securities belonging to Elton. But this is not material; for, even if Elton had paid Borland out of his own funds, for the relief of his other property, he would have had the same rights that Meurer now has. By appellants' own version, as already said, Elton held the title only as trustee for them, and if, as such trustee, Elton was forced to pay the debt primarily due by the trust property, he was entitled to be subrogated to the creditor's remedies for his reimbursement. To avoid any technical question, the transaction was carried

through by Meurer's aid, and in his name, and the marking to his use of the judgment on the bond, gave him not only the control of that judgment, but also the right to an assignment of the mortgage. Borland had no longer any interest in the mortgage, but it was not extinguished. It had passed in equity to Meurer, and carried with it the right to sue in Borland's name. Her failure to authorize the suit, or even her objection to it, was of no moment. She had no right to object.

So far, we have considered the case without reference to the family agreement. But, even if appellants had had any standing before, that agreement and their acceptance of the title under it would have put an end to every vestige of claim on their part. Further insistance that the mortgage was paid, was not only unfounded, but impudent. The learned judge left the question to the jury in a clear and comprehensive charge, of which appellants certainly have no cause to complain. He might well have refused to allow the jury to guess at the purpose of the payment to Borland, in the face of the evidence as to what took place on the occasion, and of appellants' undisputed recognition of the validity of the mortgage in the family settlement.

The errors assigned may be briefly disposed of. The right to sue on the mortgage, as already shown, was in Meurer, but, as there had been no actual assignment, he was obliged to sue in the name of the mortgagee. He was entitled, therefore, to show his interest in the suit in that form. The surprise which would have entitled the appellants to a continuance had no existence in fact. The real controversy had been fully developed in the other court, on the motion to strike off the marking of the judgment to use of Meurer.

The last assignment of error is not in compliance with our rules, as it groups the refusal of six different points into one assignment. None of the points, however, could have been affirmed. They are all based on the view that an extinguishment or merger of the mortgage had taken place, but there was no merger in law, as Meurer, and not Elton, was the party actually making the payment, and even without this technical protection, as Elton would only have been paying what Stokes or his property ought to have paid, equity would not have permitted an extinguishment against Elton's interest.

Judgment affirmed.